Case 1:11-cv-00567-JTN Doc #1 Filed 05/31/11 Page 1 of 9 Page ID#1

FILED - GR
May 31, 2011 4:21 PM
TRACEY CORDES CLERK
U S DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY __JSJ__/____ SCANNED BY ___/___

1:11-cr-567
Janet T. Neff
U.S. District Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUTH DAVISON,

    Plaintiff,

v.

SUNRISE CREDIT SERVICES INC.,

    Defendant.
_____/

## Complaint

### I. Introduction

1. This is an action for damages, brought against a debt collector for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and Michigan Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.*

### II. Jurisdiction

2. This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

### III. Parties

3. Plaintiff Ruth Davison is a natural person residing in Kent County, Michigan. Ms. Davison is a "consumer" and "person" as the terms are defined and/or used in the FDCPA. Ms. Davison is a "consumer," "debtor" and "person" as the terms are defined and/or used in the

1

MOC.

4. Defendant Sunrise Credit Services Inc. ("Sunrise") is a New York corporation, with a mailing address of 260 Airport Plaza, P.O. Box 9100, Farmingdale, New York 11735-9100. The registered agent for Sunrise in Michigan is The Corporation Company, 30600 Telegraph Road, Suite 2345, Bingham Farms, Michigan 48025. Sunrise uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Sunrise regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Sunrise is a "debt collector" as the term is defined and used in the FDCPA. Sunrise is licensed (No. 2401001174) by the State of Michigan to collect consumer debts in Michigan. Sunrise is a "collection agency" and a "licensee" as the terms are defined and used in the MOC.

**IV. Facts**

5. Ms. Davison purchased a book on credit from a company named Rodale Inc. ("Rodale"). Ms. Davison purchased the book for personal, family and household purposes. Any resulting obligation to pay money was a "debt" as the term is defined and/or used in the FDCPA and MOC.

6. Ms. Davison had a dispute with Rodale regarding the purchased book and her account.

7. Ms. Davison disputes the alleged debt.

8. Ms. Davison refuses to pay the alleged debt.

9. Apparently, Rodale hired Sunrise to collect the disputed, alleged debt from Ms. Davison.

2

10. In 2011, Sunrise wrote Ms. Davison, demanding payment of a debt in the amount of $53.52, allegedly owed by Ms. Davison to Rodale, on "Client Acct.#: 0300174430." The letter also stated in part: "Your failure to pay this undisputed bill has resulted in your good name being reported to Alliant, a consumer reporting agency. If payment is not received, Rodale will be placing your account with another professional collection agency and formal debt collection proceedings will continue." The letter instructed Ms. Davison to pay the debt directly to Rodale, either by mailing a check or credit/debit card information directly to Rodale, by telephoning Rodale's toll free telephone number, or by internet at a website maintained by Rodale.

11. On or about May 26, 2011, Ms. Davison telephoned Sunrise and spoke with a male Sunrise employee. Ms. Davison provided the Sunrise employee with her contact information. The Sunrise employee was able to look up Ms. Davison's account. Ms. Davison stated that the letter she received from Sunrise had stated: "Your failure to pay this undisputed bill has resulted in your good name being reported to Alliant, a consumer reporting agency." Ms. Davison stated that the debt was not "undisputed." Ms. Davison stated that she was calling Sunrise to communicate her dispute. The Sunrise employee stated that Ms. Davison could not dispute the debt with Sunrise. The Sunrise employee stated that Rodale had hired Sunrise to mail out collection letters on Sunrise letterhead and nothing more. The Sunrise employee stated that to dispute the debt, Ms. Davison was required to communicate her dispute directly to Rodale.

12. On or about May 26, 2011, Ms. Davison telephoned Sunrise and spoke with a female Sunrise employee identified as Loreen. Ms. Davison stated that the letter she received from Sunrise had stated: "Your failure to pay this undisputed bill has resulted in your good name

being reported to Alliant, a consumer reporting agency." Ms. Davison stated that the debt was not "undisputed." Ms. Davison stated that she was calling Sunrise to communicate her dispute. The Sunrise employee stated that Ms. Davison could not dispute the debt with Sunrise. The Sunrise employee stated that to dispute the debt, Ms. Davison was required to telephone Rodale and stay on hold until someone picks up. The Sunrise employee stated that Rodale had hired Sunrise to mail out collection letters on Sunrise letterhead and nothing more. The Sunrise employee stated that to dispute the debt, Ms. Davison was required to communicate her dispute directly to Rodale. Ms. Davison again stated that she disputed the debt. Ms. Davison stated that the next time Sunrise were to communicate with Rodale regarding the debt, she wanted Sunrise also to communicate to Rodale that Ms. Davison disputed the debt. The Sunrise employee responded: "You will have to call our client and tell them that, that you dispute it. We only [mail] the statements." Ms. Davison was then transferred to a male Sunrise employee identified as a manager. Ms. Davison again stated that the letter she received from Sunrise had stated: "Your failure to pay this undisputed bill has resulted in your good name being reported to Alliant, a consumer reporting agency." Ms. Davison again stated that the debt was not "undisputed." Ms. Davison again stated that she was calling Sunrise to communicate her dispute. The second Sunrise employee stated that Ms. Davison could not dispute the debt with Sunrise. The second Sunrise employee stated that to dispute the debt, Ms. Davison was required to communicate her dispute directly to Rodale. The second Sunrise employee stated that Rodale had hired Sunrise to mail out collection letters on Sunrise letterhead and nothing more. The second Sunrise employee stated that Rodale used Sunrise for the limited purpose of using the Sunrise letterhead "to get people's attention to pay their bills or whatever." The second Sunrise

4

employee stated that Sunrise knew nothing about any of the Rodale accounts, that Sunrise was not hired by Rodale to service the accounts, and that Sunrise simply inserted account information in a generic letter and mailed them out. The second Sunrise employee stated, "think of us as a billing house." The second Sunrise employee stated, "you telling me you dispute it isn't really going to do anything because I can't note anything."

13. Sunrise did not meaningfully participate in collecting the alleged debt from Ms. Davison.

14. Sunrise furnished and created a form letter that gave Ms. Davison the false impression that Sunrise was meaningfully involved in collecting the alleged debt from Ms. Davison.

15. Sunrise functioned as a mere mailing service for Rodale.

16. Sunrise performed only ministerial functions in efforts by Rodale to collect the alleged debt from Ms. Davison.

17. Sunrise's participation in collecting the alleged debt from Ms. Davison was so minimal, that Rodale should be deemed liable as a debt collector. *Larson v. Evanston Northwestern Healthcare Corp.*, 1999 U.S. Dist. LEXIS 11380 (N.D.Ill. July 20, 1999).

18. The FDCPA states that it is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in the attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating. 15 U.S.C. § 1692j.

19. The FDCPA does not require the consumer to provide *any reason at all* in order

to dispute a debt. *Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234 (D. Haw. 2002); (*Mendez v. M.R.S. Assoc.*, 2004 WL 1745779 *2 (N.D. Ill. Aug. 3, 2004) (a consumer is entitled to dispute the validity of a debt for a good reason, a bad reason, or no reason at all); *Whitten v. ARS National Servs. Inc.*, 2002 WL 1050320 *4 (N.D. Ill. May 23, 2002) (imposing a requirement that a consumer have a 'valid' reason to dispute the debt is inconsistent with FDCPA); *Castro v. ARS National Servs., Inc.*, 2000 WL 264310 (S.D.N.Y. Mar. 8, 2000); *Frey v. Satter, Beyer & Spires*, 1999 WL 301650 (N.D. Ill. May 3, 1999); *DeSantis v. Computer Credit, Inc.*, 269 f.3d 159 (2nd Cir. 2001); *Mejia v. Marauder Corporation*, 2007 WL 806486 (N.D. Cal. 2007) (unlawful to suggest that proof of payment required for dispute). The FDCPA allows the consumer to orally dispute a debt. *Brady v. The Credit Recovery Company, Inc.*, 160 F.3d 64 (1st Cir. 1998). The FDCPA does not limit the time period for disputing a debt. A consumer can always dispute a debt with a debt collector, regardless of the passage of time.

20. Credit reporting constitutes an attempt to collect a debt. *See, e.g., Rivera v. Bank One,* 145 F.R.D. 614, 623 (D.P.R. 1993)(a creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed, in part, to wrench compliance with payment terms from its cardholder"); *Matter of Sommersdorf,* 139 B.R. 700, 701 (Bankr.S.D. Ohio 1991); *Ditty v. CheckRite, Ltd.,* 973 F.Supp. 1320, 1331 (D.Utah 1997).

21. The FDCPA states that a debt collector may not communicate or threaten to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. 15 U.S.C. § 1692e(8).

22. Sunrise and its employees wrongfully stated to Ms. Davison that she could not

dispute the debt directly with Sunrise.

23. Each Sunrise employee who spoke with Ms. Davison intended to speak the words the Sunrise employee spoke to Ms. Davison.

24. The acts and omissions of Sunrise and its employee done in connection with efforts to collect a debt from Ms. Davison were done intentionally and wilfully.

25. Sunrise and its employees intentionally and wilfully violated the FDCPA and MOC.

26. As an actual and proximate result of the acts and omissions of Sunrise and its employee, plaintiff has suffered actual damages and injury, including but not limited to, fear, stress, mental anguish, emotional stress, acute embarrassment and suffering for which she should be compensated in an amount to be established by jury and at trial.

V.     **Claims for Relief**

### Count 1– Fair Debt Collection Practices Act

27. Plaintiff incorporates the foregoing paragraphs by reference.

28. Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

   a) Defendant violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

   b) Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)   Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff;

d)   Defendant violated 15 U.S.C. § 1692g; and

e)   Defendant violated 15 U.S.C. § 1692j.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)   Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)   Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)   Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)   Such further relief as the court deems just and proper.

### Count 2 – Michigan Occupational Code

29.   Plaintiff incorporates the foregoing paragraphs by reference.

30.   Defendant has violated the MOC. Defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)   Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b)   Defendant violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened and (ii) the legal rights of a creditor or debtor;

c)   Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

d)   Defendant violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to M.C.L. § 339.916(2);

b) Treble the actual damages pursuant to M.C.L. § 339.916(2);

c) Statutory damages pursuant to M.C.L. § 339.916(2); and

d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: May 31, 2011

*/s/ Phillip C. Rogers*
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com